# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| JAMIE L. HENSLEY | : | Case No. CV-21-373 |
| 3402 Oxford-Middletown Rd. | : | |
| Trenton, OH 45067 | : | |
| | : | |
| JOSEPH S. GUTMAN | : | |
| 5457 Sugar Maple Run | : | |
| Hamilton, OH 45011 | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| WEST CHESTER TOWNSHIP | : | **COMPLAINT WITH JURY DEMAND** |
| 9113 Cincinnati-Dayton Road | : | |
| West Chester Township, OH 45069 | : | |
| | : | |
| WEST CHESTER TOWNSHIP BOARD OF | : | |
| TRUSTEES | : | |
| 9113 Cincinnati-Dayton Road | : | |
| West Chester Township, OH 45069 | : | |
| | : | |
| WEST CHESTER TOWNSHIP POLICE | : | |
| 9577 Beckett Road, Suite 500 | : | |
| West Chester Township, OH 45069 | : | |
| | : | |
| LARRY D. BURKS | : | |
| In his official and individual capacity | : | |
| c/o West Chester Township | : | |
| 9113 Cincinnati-Dayton Road | : | |
| West Chester Township, OH 45069 | : | |
| | : | |
| ANN BECKER | : | |
| In her official and individual capacity | : | |
| c/o West Chester Township | : | |
| 9113 Cincinnati-Dayton Road | : | |
| West Chester Township, OH 45069 | : | |
| | : | |
| MARK S. WELCH | : | |
| In his official and individual capacity | : | |
| c/o West Chester Township | : | |
| 9113 Cincinnati-Dayton Road | : | |
| West Chester Township, OH 45069 | : | |

1

```
LEE WONG                                    :
In his official and individual capacity     :
c/o West Chester Township                   :
9113 Cincinnati-Dayton Road                 :
West Chester Township, OH 45069             :
                                            :
JOEL HERZOG                                 :
In his official and individual capacity     :
c/o West Chester Police Department          :
9577 Beckett Road, Suite 500                :
West Chester Township, OH 45069             :
                                            :
DOUGLAS E. DUCKETT                          :
In his individual capacity                  :
2509 Erie Avenue                            :
Cincinnati, OH 45208                        :
                                            :
              Defendants.                   :
```

Plaintiffs Jamie Hensley and Joseph Gutman, complaining of Defendants West Chester Township, West Chester Township Board of Trustees, West Chester Township Police Department, Larry D. Burks, Ann Becker, Mark S. Welch, Lee Wong, Joel Herzog, and Donald E. Duckett, state as follows:

## **PARTIES**

1.      Plaintiff Captain Jamie Hensley ("Captain Hensley") is a resident and citizen of the State of Ohio.

2.      Plaintiff Captain Joseph Gutman ("Captain Gutman") is a resident and citizen of the State of Ohio.

3.      Defendant West Chester Township ("Township") is a public entity and political subdivision of the State of Ohio and an employer under applicable federal and Ohio law.

4.      Defendant West Chester Township Police Department ("WCPD") is a public entity organized under a political subdivision of the State of Ohio and an employer under applicable federal and Ohio law.

5.     Defendant West Chester Township Board of Trustees ("Trustees") is a public entity comprised of elected officials governing a political subdivision of the State of Ohio and an employer under applicable federal and Ohio law. At all times relevant, the Trustees employed, controlled, or had the right to control Defendants Joel Herzog, Larry Burks, and Douglas Duckett.

6.     Defendant Ann Becker ("Defendant Becker"), is a resident and citizen of the State of Ohio. At all times relevant, Defendant Becker has been a Trustee of West Chester Township. At all times material hereto, Defendant Becker acted in her official capacity as agent for Defendants WCPD, the Township, and the Trustees and/or in her individual capacity, as well as in the course of her employment and under the color of state and federal law.

7.     Defendant Mark S. Welch ("Defendant Welch"), is a resident and citizen of the State of Ohio. At all times relevant, Defendant Welch has been a Trustee of West Chester Township. At all times material hereto, Defendant Welch acted in his official capacity as agent for Defendants WCPD, the Township, and the Trustees and/or in his individual capacity, as well as in the course of his employment and under the color of state and federal law.

8.     Defendant Lee Wong ("Defendant Wong") is a resident and citizen of the State of Ohio. At all times relevant, Defendant Wong has been a Trustee of West Chester Township. At all times material hereto, Defendant Wong acted in his official capacity as agent for Defendants WCPD, the Township, and the Trustees and/or in his individual capacity, as well as in the course of his employment and under the color of state and federal law.

9.      Defendant Joel Herzog ("Defendant Herzog") is Chief of the West Chester Township Police, and a resident and citizen of the State of Ohio. At all times material hereto, Defendant Herzog acted in his official capacity as agent for Defendants WCPD and the Township and/or in his individual capacity, as well as in the course of his employment and under the color of state and federal law.

3

10. Defendant Larry D. Burks ("Burks") is Township Administrator of West Chester Township, and a resident and citizen of the State of Ohio. At all times material hereto, Defendant Burks acted in his official capacity as agent for Defendants WCPD, the Township, and the Trustees and/or in his individual capacity, as well as in the course of his employment and under the color of state and federal law.

11. Defendant Douglas Duckett ("Duckett") is an attorney who was contracted by Defendant Trustees and Defendant Township, and he is a resident and citizen of the State of Ohio. At all times material hereto, Defendant Duckett acted as an agent for Defendants the Township and the Trustees.

## JURISDICTION AND VENUE

12. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States. Plaintiffs' Count I arises under Title VII of the Civil Rights Act of 1964, et seq. ("Title VII"), and Count IV arises under 42 U.S.C. §1983. This Court has supplemental jurisdiction over the remaining Counts pursuant to 28 U.S.C. § 1367, because they arise out of the same set of operative facts as those relevant to Counts I and IV so as to make them part of the same case in controversy.

13. Venue is proper in the Southern District of Ohio, Western Division pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to these claims occurred in this division and district.

14. Plaintiffs Gutman and Hensley timely filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") under its work sharing agreement with the Ohio Civil Rights Commission.

15. Plaintiffs Gutman and Hensley were issued Notices of Right to Sue, and this Complaint is filed within 90 days of the Notices.

## FACTUAL ALLEGATIONS

**A.     Plaintiffs Were Well-Respected And Valued Members Of The West Chester Police Department**

16.     Captain Gutman began his employment as a patrol officer with West Chester Township Police Department in January 1995, and Captain Hensley as a patrol officer in July 1999. Both rose through the ranks to Captain through numerous promotions under various Chiefs of Police.

17.     Captain Gutman and Captain Hensley have received many commendations, including for rescuing a citizen from a burning building and helping to resolve an armed child hostage incident.

18.     Captain Gutman served as Uniformed Patrol Commander, Criminal Investigation Section Commander and SWAT Commander before being promoted to Captain by Defendant Herzog in 2016.

19.     Captain Hensley is a former United States Marine. Prior to his promotion to Captain by Defendant Herzog in 2016, he served over six years in Internal Affairs and as a detective, a SWAT commander, and training coordinator, and he developed many of the department's policies and procedures.

20.     Captains Hensley and Gutman had impeccable records of performance and reputations for unfailing integrity for over 20 years with WCPD. They were highly respected by the department officers and command staff and routinely received excellent performance reviews.

21.     Defendant Herzog has been with WCPD since 1991 and was appointed by the Trustees as Chief in December 2014.  Defendant Herzog reports to Township Administrator Larry Burks and the Trustees.  Defendant Herzog picked Brian Rebholz to be appointed as his Assistant Chief.

22.     Defendant Herzog commended both Captains: "As leaders . . .they set the standard by adhering to our Vision, Mission, and Guiding Principles," recognizing them for "the positive impact not only for the organization and its personnel, but the community we serve," and the Trustees publicly acknowledged Plaintiffs' "long exemplary" and "exceptional careers" and that they "each had served this community with great commitment."

**B.    Plaintiffs Begin Witnessing Inappropriate And Discriminatory Behavior From Defendant Herzog**

23.     Once Plaintiffs became part of the command staff, Defendant Herzog apparently deemed it safe to make blatantly offensive comments to and around Plaintiffs about female WCPD employees, recruits, and citizens, as well as department employees and citizens of color.

24.     For example, Defendant Herzog repeatedly referred to Indian residents as "dots," and his allergist, the husband of a mosque leader, as a "terrorist."

25.     Defendant Herzog repeatedly mocked Trustee Lee Wong's accent. Trustee Wong is ethnically Chinese and a U.S. Army veteran.

26.     Defendant Herzog referred to two officers as "White Mike" and "Brown Mike," criticized WCPD's only black officer for his hairstyle, and referred to black suspects as "Number Twos."  He did not refer to suspects of other races by numbers.

27.     Defendant Herzog used vulgar language to joke that a female recruit's breasts would keep her from doing push-ups. He said another female recruit's rear was conducive to "cruiser butt" and frequently commented on female servers' body parts using offensive language while at lunch with command staff in uniform.

28.     Defendant Herzog also made remarks indicating the female officers' shirts needed to be tighter.  Defendant Herzog required a female civilian employee to dress in business casual

clothing, because he thought the polos and pants her male counterparts were allowed to wear looked unattractive on her.

## C.     Plaintiffs Experienced Unwanted Attention From A Newly Hired Female Staff Member And Reported It To Defendants

29.     In March 2018, Defendant Herzog hired Michelle Freeman to serve as his administrative assistant.

30.     Defendant Herzog influenced the applicant screening and hiring process to ensure Ms. Freeman was hired over a more qualified internal applicant from the fire department.

31.     Before and after he hired Ms. Freeman, Defendant Herzog made it well known to members of the command staff that he found Ms. Freeman attractive, commenting on her "tight" rear end and her body. People openly expressed concern that Defendant Herzog was going to get himself in trouble by hiring her. He encouraged Plaintiffs and other command staff to join in his comments and appreciation for Ms. Freeman's appearance, which made Plaintiffs uneasy.

32.     After being hired, Ms. Freeman repeatedly dressed inappropriately at work, wearing thigh-high skirts with very high stiletto heels and low-necked tops. At one point she wore very short shorts with a midriff top to work.

33.     Ms. Freemen began flirting with Captain Gutman, which he did his best to ignore, but it caused him increasing discomfort.  The flirting escalated until Ms. Freeman made a point of winking at him in front of his wife at a police event. Captain Hensley, Defendant Herzog and Rebholz had also commented about Ms. Freeman winking at them. Defendant Herzog mused that he was envious of the others, saying he hoped he was the only person she was winking at.

34.     Captain Gutman's wife brought Ms. Freeman's behavior to the attention of Ms. Freeman's supervisor, Courtney Lovell.

35.     Ms. Lovell acknowledged verbally and in writing to Captain Gutman's wife that others had made similar observations, and she promised to address the issue with Ms. Freeman.

36.     In response, Defendant Herzog, Assistant Chief Rebholz, and Ms. Lovell called a meeting with Captain Gutman. Captain Hensley attended to support Captain Gutman and confirm that Ms. Freeman's behavior could be perceived as flirtatious and her attire was sometimes too revealing for a police department.  Captain Hensley also told Defendant Herzog that Ms. Freeman seemed to make up reasons to linger in the office after hours with him, waiting nearby while he changed out of his uniform in his office.

37.     Plaintiffs informed Human Resources and Defendant Herzog that they did not want to make a formal complaint about Ms. Freeman and would prefer to have the situation handled quietly, but did want her to behave and dress more professionally.

38.     Instead, Defendant Herzog started a paper trail targeting Captain Gutman with a memorandum that grossly misstated the content, tone and nature of the Captains' concerns, drastically downplayed Ms. Freeman's behavior, and intentionally omitted important, corroborating details.

39.     Defendant Herzog told the Captains that if they did not want to file a formal complaint they had to initial his inaccurate memorandum to certify their concerns were listed correctly.  They refused to do either.

40.     WCPD then changed its internal complaint policy so that complainants would not know the results of an investigation.  Defendant Herzog informed Plaintiffs in a June 2018 memorandum, "I am finished with the informal handling" of their concerns.

41.     At no time did Defendant Herzog or any of Defendants indicate that Plaintiffs' concerns were invalid or inappropriate in any way.

8

42.    After the investigation, Ms. Freeman no longer wore revealing clothes at work or regularly engage with Plaintiffs in a manner that could be considered flirtation. Plaintiffs maintained a professional, cordial relationship with Ms. Freeman and made no further complaints about her.

**D.    Plaintiffs Experienced Retaliation After Participating In The Investigation Into Freeman's Inappropriate Behavior**

43.    After Plaintiffs participated in the investigation concerning Freeman's conduct, Defendant Herzog retaliated against them by taking away responsibilities, excluding them from decisions, undermining them to their subordinates, and scrutinizing how they managed their respective bureaus day-to-day.

44.    Defendant Herzog removed Captain Gutman from interviewing new hires, assigning training, and reviewing polygraphs.  When Captain Gutman asked why, Defendant Herzog indicated he did not trust Captain Gutman.  Defendant Herzog told Human Resources the Captains had "attacked" and "betrayed" him.

**E.    Plaintiffs Participated In An Investigation Into Discriminatory And Retaliatory Conduct By Defendant Herzog**

45.    In early 2019, Plaintiffs learned that an anonymous caller to the Township claimed to have a photo of Defendant Herzog wearing blackface.

46.    Captain Hensley informed Defendant Herzog that Captain Hensley's wife and sister-in-law saw the photo when it was posted and had shown it to him. Defendant Herzog responded by asking him if he had a copy. Captain Hensley said he did not. Defendant Herzog tried to convince Captain Hensley that maybe he was dressed as a soldier or a hobo.

47.    Following Captain Hensley's report, Defendant Herzog began making veiled threats to Captain Hensley about the photo and call.

48. Because of the veiled threats and growing retaliation against them both, Plaintiffs met with Defendant Burks, Human Resources, and Assistant Administrator Lisa Brown to discuss their concerns that Defendant Herzog was retaliating against them.

49. Plaintiffs confirmed that Captain Hensley had seen the photo of Defendant Herzog in black face and told Defendant Burks, Human Resources, and Ms. Brown that Defendant Herzog's racist and sexist attitudes were tarnishing the department. Plaintiffs described in detail Defendant Herzog's sexist, racist, and anti-Muslim statements in the workplace about citizens, department members, and recruits.

50. No one investigated Plaintiffs' concerns or did anything to remedy Defendant Herzog's behavior or retaliation. Instead, Defendant Larry Burks told Plaintiffs to work it out with Defendant Herzog themselves.

51. As instructed, the Captains told Defendant Herzog that they had met with Defendant Burks and reported his inappropriate comments and ongoing retaliation. They explained they would no longer tolerate sexist or racist jokes or remarks in the workplace.

**F. Defendant Herzog Ramped Up His Campaign Of Retaliation**

52. After Plaintiffs informed Defendant Herzog of their complaint to Defendant Burks, Defendant Herzog required them to tell his assistant, Ms. Freeman, whenever they left the building.

53. Plaintiffs' 2019 evaluations later that year, while still very good, were lower than they had ever received, impacting their pay. Defendant Herzog's primary complaint was that they were not friendly enough with Ms. Freeman. Neither Captain was ever accused of being anything less than professional and cordial to Ms. Freeman, which is all Defendants WCPD and Township policy requires.

54. Defendant Herzog began scrutinizing Plaintiffs' daily activities even more closely. He excluded Plaintiffs from union contract communications and policy and budget decisions. He

assigned some of Plaintiffs' responsibilities to lower ranking department members without telling them first, causing confusion and questions about their authority.

### G.  Defendant Herzog Used His Position To Help A Political Ally Arrested For Assaulting His Wife

55.  In early 2020, the media made a public records request for communications from Defendant Herzog regarding his handling of a high-profile domestic violence case. Jeff Couch, a close friend of Defendant Herzog, and "major" political donor, was arrested for, and ultimately convicted of, feloniously assaulting his wife.  Couch made statements during his arrest indicating he expected preferential treatment because of his relationship with Defendant Herzog. Defendant Herzog reportedly tried to intercede on Mr. Couch's behalf to release him from jail earlier than domestic violence law permitted.

56.  WCPD's public records clerk told Captain Gutman that Defendant Herzog was angry with her for releasing previous public records about the Couch case that put him in a bad light, and she was afraid to release damaging texts by Defendant Herzog that she believed were public records.

### H.  Defendant Herzog Placed Plaintiff Hensley On A Sham Performance Improvement Plan

57.  Defendant Herzog met with Captain Hensley to place him on a vaguely-worded performance improvement plan on January 28, 2020 for allegedly not meeting expectations. Defendant Herzog permitted Captain Hensley to record the meeting on his phone.

58.  In the meeting, Defendant Herzog again criticized Captain Hensley for not being friendly enough with Ms. Freeman, but admitted that Ms. Freeman herself had never complained about it.

59.  Defendant Herzog criticized Captain Hensley attended an event honoring black business leaders in November 2019 as a personal guest of one such leader and demanded that he

be informed of any future events where Captain Hensley could be "perceived as a representative" of the department. Neither Captain Hensley nor any other captains had previously been required to seek advance permission to attend social events.

60. Defendant Herzog then criticized Captain Hensley about a "word of the day" Facebook post by Captain Hensley's wife that contained a definition of the word "cronyism," and another post about her own boss. Defendant Herzog insisted that the posts were about him.

61. Captain Hensley protested that his wife's Facebook post had nothing to do with WCPD, that she had a First Amendment right to post what she did, and that he did not know anything about the post when she made it.

62. Defendant Herzog admitted she was entitled by the First Amendment to post what she wanted, but nevertheless told Captain Hensley that he was accountable for his wife's speech and asked him to demote himself.

63. Defendant Herzog later ordered Captain Hensley to give him the recording of the meeting. Captain Hensley immediately provided with Defendant Herzog a copy.

64. Captain Hensley requested to meet with Ms. Brown, Defendant Larry Burks and Human Resources to discuss the retaliatory performance plan, knowing that such a significant black mark in his public personnel file would be a roadblock to other police jobs or advancement. He informed Defendants that he wanted to seek an attorney's advice before meeting, and Defendant Herzog was notified of this.

I.     **Defendant Herzog Initiated A Bogus Internal Affairs Investigation Against Plaintiff Hensley**

65. Two business days after Captain Hensley told Defendants he was seeking the advice of an attorney, Defendant Herzog initiated an internal affairs investigation against Captain Hensley under false pretenses.

66.     During his interview with Internal Affairs, Captain Hensley told the investigators that the performance improvement plan and investigation were acts of retaliation against him for reporting Defendant Herzog's racist and sexist behavior and participating in the 2018 investigation and protected speech

67.     Defendants West Chester Township and Larry Burks instructed Internal Affairs, through Ms. Brown, not to investigate any concerns Captain Hensley brought up about Defendant Herzog in his internal affairs investigation.

**J.      Plaintiffs Hire Counsel And Make Another Formal Complaint Of Retaliation**

68.     On February 24, 2020, Plaintiffs filed a formal written complaint with Defendant Burks in a letter from their attorney.  In the letter, Plaintiffs informed Defendant Burks once again that Defendant Herzog was retaliating against them for complaints of racism, sexism and retaliation, and that he was attempting to manipulate public records.

69.     Captain Hensley also filed a separate formal complaint of discrimination, retaliation, and First Amendment retaliation on February 24, 2020, which detailed the history of his concerns, Defendant Herzog's retaliation against him and Captain Gutman, and multiple failures by Defendant Burks and the Township to act on their complaints or protect them.  Captain Gutman filed a similar written complaint in March 2020 detailing his history and concerns.

**K.      Defendants Conducted A Sham Investigation And Issued A False Report Defaming Plaintiffs**

70.     Rather than conduct an unbiased investigation into Plaintiffs' complaints about Defendant Herzog's behavior, Defendants hired Defendant Duckett to investigate "the conduct of the two police captains" and defend themselves against Plaintiffs' claims of unlawful conduct.

71.     Defendant Duckett, who formerly served as Butler County's Human Resources Administrator, holds himself out as a "Consultant and Trainer in Human Resources and Labor Management" for municipal and county governments, officials, and their lawyers.

72.     During Defendant Duckett's investigation, Plaintiffs cooperated fully over five days of exhaustive, threatening, and combative questioning during which Defendant Duckett routinely harassed them, insulted them and their families, and threatened their employment.

73.     Defendant Duckett deliberately did not record any interviews except for Plaintiffs', so there is no objective evidence of what anyone else told him. He also deliberately did not record several threatening instructions he gave to Plaintiffs. Portions of the recordings during which Defendant Duckett now claims Captain Hensley lied to him are missing.

74.     In collusion with the Trustees, Defendant Burks, and Defendant Herzog, Defendant Duckett intentionally distorted and mischaracterized interview statements, failed to interview corroborating witnesses, and selectively ignored most of what Plaintiffs told him so he could offer the report Defendants wanted: one that excused Defendant Herzog's unlawful behavior and set the stage to terminate Plaintiffs under false pretenses. Defendants did this to punish Plaintiffs for their protected activity and speech and for the protected speech of Plaintiff Hensley's wife.

75.     At the same time, Duckett largely absolved Defendant Herzog for offensive and discriminatory comments he made about members of the community and about employees and representatives of West Chester Township.

76.     According to Defendant Duckett, Defendant Herzog's vulgar comments about women's breasts and rears was just "locker room talk," and using his position to help a friend who feloniously abused his wife get special treatment was done with "good motives."

77.     Defendant Duckett excused Defendant Herzog calling Middle Eastern and Asian citizens "dots" and "terrorists" and black people "Number Two" as just "lingo" that needed

"context." He dismissed Defendant Herzog referring to a Latino officer as "Brown Mike" as a "joking reference."

78.    Defendant Duckett's report also defamed Plaintiffs with several false statements, including:

      (a)    Defendant Duckett falsely stated that Plaintiffs were sexists based on their prior report of Michelle Freeman's unwanted advances, even though no one, including Ms. Freeman, had ever accused them of being sexist;

      (b)    Defendant Duckett falsely asserted, without any factual basis, that Plaintiffs did not deserve their previously exemplary performance reviews;

      (c)    Defendant Duckett falsely stated that Captain Gutman was untruthful about the text messages that he saw concerning Defendant Herzog's intervention in the Jeff Couch matter, described above, because Captain Gutman consistently said he could not remember exactly what they said;

      (d)    Defendant Duckett falsely accused Captain Hensley of lying to Defendant Herzog about his wife's Facebook post, having the meeting recording on his phone, and making up his allegation that he had seen the blackface photo of Defendant Herzog.  Defendant Duckett never asked to speak with anyone Captain Hensley identified as having definitely seen the picture, and he knew the truth about Captain Hensley's statements in the meeting.

79.    In his report, Defendant Duckett recommended that Captain Hensley be charged for dishonesty based on false characterizations of statements Captain Hensley during the interview. Even though Defendant Duckett represented to Plaintiffs and their counsel that he was recording the entirety of his interview of them, many portions of the interviews that served as the basis for his conclusion that Plaintiff Hensley was dishonest were not recorded.

80. Defendants repeated Defendant Duckett's false accusations in the press knowing they were false. Defendants also released Defendant Duckett's investigation report to the media while other members of the department were still coming forward to corroborate Plaintiffs' allegations. Defendants intentionally did not investigate those additional complaints until after they released the incomplete and defamatory report to the press.

81. The Trustees adopted Defendant Duckett's report and implemented his recommendations in full with knowledge or reckless disregard of the report's false and damaging statements of fact about Plaintiffs. The Trustees repeated several, such as Plaintiffs being sexist and untruthful, in a public statement read to the press by Defendant Becker at a Trustee meeting and then distributed in writing to the media.

### L. Defendants Forced Plaintiff Hensley To Resign

82. On or about June 23, 2020, Defendants' Law Director told Hensley's counsel that if Plaintiff Hensley did not resign, Defendants Township and WCPD would terminate his employment for dishonesty, and he would lose his pension.

83. On or about June 23, 2020, as a result of Defendants' threats, Plaintiff Hensley resigned his employment with Defendant WCPD in order to preserve the substantial pension benefits he earned.

### M. Defendants Retaliated Against Plaintiff Gutman And Forced Him To Resign

84. Knowing that it would publicly ruin Captain Gutman's career and reputation, Defendants placed him on a disciplinary plan.

85. The plan also threatened Captain Gutman with termination if he did not bring future retaliation concerns directly to Defendant Herzog, even if it was Defendant Herzog who was retaliating against him, and Defendants banned him from making any such complaints through his lawyer.

16

86. The day after Captain Hensley's resignation was made public, Ms. Freeman made an obvious point of winking and smirking at Captain Gutman, forcing Captain Gutman to renew his complaint about her behavior under the terms of his disciplinary plan.

87. Defendants continued to retaliate against Plaintiffs by making false public statements that they were dishonest and sexist, irreparably damaging their personal and professional reputation.

88. Defendant Herzog also publicly repeated his lie to Defendant Duckett that Captain Gutman had called his doctor a terrorist, including in person to a group of community leaders while Captain Gutman stood nearby.

89. The continuing hostility from Defendant Herzog, his allies, and the Township caused Captain Gutman's working conditions to be so intolerable that no reasonable person would endure them. The ongoing retaliation and hostility began impacting Captain Gutman's health. More significantly, Captain Gutman feared for his safety were he to encounter a life-threatening situation in the line of duty due to the extreme hostility directed at him in the department. As a result, he was forced to resign from WCPD on January 16, 2021 after over 24 years of service to West Chester Township.

**N.  Other WCPD Employees Have Complained About Discrimination And Retaliation, And Otherwise Corroborated Plaintiffs' Allegations**

90. Since Plaintiffs came forward, many other WCPD employees have made written complaints to Defendants about unlawful discrimination, retaliation, and other wrongdoing by Defendant Herzog, and union members called for a vote of no confidence against him. At least three of these officers have quit.

91. On information and belief, Lieutenant Chris Whitton, Officer Ray Jones, Officer Daniel Dean, Officer Tony Frey, Officer Neil Schmitz, Officer Charles Hawkins, and Officer

Michael Lopez, whom Defendant Herzog referred to as "Brown Mike," all made such protected complaints and were retaliated against.

92.     Defendants engage in a pattern and practice of retaliating against members of the police department who speak out against unlawful behavior by Defendant Herzog.

93.     Defendants have tolerated blatant sexism, disrespect, and lies from multiple Township and WCPD employees but did not subject them to a hostile work environment, ruin their careers, or force them to resign.

94.     Defendants continue to engage in a pattern and practice of silencing and retaliating against members of the West Chester Police Department who speak out against unlawful behavior by Defendant Herzog.

## STATEMENT OF CLAIMS

### Count 1 - Retaliation (Title VII)
### Against Defendants WCPD, Township, and Trustees

95.     Plaintiffs restate and incorporate the allegations in the preceding paragraphs.

96.     Plaintiffs engaged in protected activity when they reported what they reasonably and in good faith believed to constitute illegal race, sex, and national origin discrimination and retaliation for making those reports, including but not limited to participating in internal investigations concerning sexist and racially hostile comments and behavior by Defendant Herzog.

97.     Defendants were aware of this protected activity.

98.     Plaintiffs suffered adverse actions in their employment including, but not limited to: lower pay; downgraded duties and responsibilities; constructive discharge; and damage to their professional reputation.

99.     Plaintiffs' protected activity was a determinative factor in Defendants' decision to act against Plaintiffs.

18

100. Defendants acted with malice, recklessness, and a conscious disregard for Plaintiffs' rights.

101. As a direct result of Defendants' unlawful conduct, Plaintiffs have suffered substantial damages and are entitled to judgment.

### Count 2 – Retaliation (O.R.C. § 4112)
### Against Defendants Duckett, Herzog, Burks, Becker, Welch, Wong, WCPD, Township, and Trustees

102. Plaintiffs restate and incorporate the allegations in the preceding paragraphs.

103. Plaintiffs engaged in protected activity when they reported what they reasonably and in good faith believed to constitute illegal race, sex, and national origin discrimination and retaliation for making those reports, including but not limited to participating in internal investigations concerning sexist and racially hostile comments and behavior by Defendant Herzog.

104. Defendants were aware of this protected activity.

105. Plaintiffs suffered adverse actions in their employment including, but not limited to: lower pay; downgraded duties and responsibilities; constructive discharge; and damage to their professional reputation.

106. Defendants Duckett, Herzog, Burks, Becker, Welch, and Wong are individually liable under O.R.C. § 4112.02 (I) and (J) for discriminating against Plaintiffs for opposing unlawful discriminatory practices and participating in investigations of such practices, and for aiding, abetting, inciting, compelling and/or coercing discriminatory acts.

107. Plaintiffs' protected activity was a determinative factor in Defendants' decision to act against Plaintiffs.

108. Defendants acted with malice, recklessness, and a conscious disregard for Plaintiffs' rights.

109.    As a direct result of Defendants' unlawful conduct, Plaintiffs have suffered substantial damages and are entitled to judgment.

### Count 3 – Defamation
### Against Defendants Duckett, Herzog, Burks, Wong, Welch, and Becker

110.    Plaintiffs restate and incorporate the allegations in the preceding paragraphs.

111.    Defendants Duckett, Herzog, Burks, Wong, Welch, and Becker published several false and defamatory statements against Plaintiffs, including but not limited to asserting publicly that Plaintiffs lied and are sexist.

112.    Defendant Herzog also falsely stated in public that Plaintiff Gutman made an anti-Muslim statement that was actually made by Defendant Herzog.

113.    Defendants made and published the false statements knowing or with constructive knowledge that the statements were false or with negligence as to falsity.

114.    These statements were defamatory and interfered with their ability to work as peace officers. These statements were defamatory per se and were intended to harm Plaintiffs in their occupation.

115.    As a result, Plaintiffs suffered harm to their personal and professional reputations, their standing in the community, profession, and their personal lives.

116.    Defendants made the statements maliciously, recklessly, negligently, and without privilege.

117.    As a direct result of Defendants' unlawful conduct, Plaintiffs have suffered substantial damages and are entitled to judgment.

### Count 4 – First Amendment Retaliation (42 U.S.C. § 1983)
### Against Defendants Herzog, Burks, Welch, Wong, Becker, WCPD, Township, and Trustees

118.    Plaintiffs restate and incorporate the allegations in the preceding paragraphs.

119.    Plaintiff Hensley's wife engaged in constitutionally-protected speech when she posted on her Facebook page things that Defendant Herzog thought cast him in a negative light.

120.    Subsequently, Defendants retaliated against Plaintiff Hensley for his wife's speech by harassing him and forcing him to resign.

121.    These adverse employment actions were motivated at least in part by Ms. Hensley's exercise of her constitutionally-protected right of speech.

122.    Due to the close familial relationship between Plaintiff Hensley and his wife, retaliation against Plaintiff Hensley for his wife's speech violates the First Amendment.  Plaintiff Hensley suffered an injury in fact as a result of Defendants' assault on the constitutionally-protected speech of Plaintiff Hensley's wife.  A citizen of ordinary firmness would be dissuaded from engaging in constitutionally-protected speech if her spouse would experience retaliation from the government as a result.

123.    Defendants acted with malice, recklessness, and a conscious disregard for Plaintiff Hensley's constitutionally protected rights.

124.    As a direct result of Defendants' unlawful conduct, Plaintiff Hensley has suffered substantial damages and is entitled to judgment.

### Count 5 – First Amendment Retaliation (42 U.S.C. § 1983)
### Against Defendants Herzog, Burks, Welch, Wong, Becker, WCPD, Township, and Trustees

125.    Plaintiffs restate and incorporate the allegations in the preceding paragraphs.

126.    Plaintiffs Hensley and Gutman engaged in constitutionally protected speech by reporting and participating in the investigation of Defendant Herzog's unlawful comments and behavior.

127.    In making the above-referenced report, Plaintiffs spoke as citizens and they had no job-related obligation to make these reports.  They also made the reports outside the chain of command.

128.    The above-referenced reports related to matters of public concern.  Plaintiffs' speech concerned unlawful acts by the chief of police and discriminatory attitudes about people whom he is employed and sworn to protect and serve.

129.    The interest of Plaintiffs as citizens in commenting on these matters of public concern outweighed Defendants' interest in efficient delivery of public services.

130.    Subsequently to Plaintiffs' reports, Defendants retaliated against Plaintiffs by harassing them, issuing undeserved discipline, and forcing them to resign.

131.    These adverse employment actions were motivated at least in part by Plaintiffs' exercise of their constitutionally-protected right of speech.

132.    Defendants acted with malice, recklessness, and a conscious disregard for Plaintiffs' constitutionally protected rights.

133.    As a direct result of Defendants' unlawful conduct, Plaintiffs have suffered substantial damages and are entitled to judgment.

### Count 6 – Civil Liability for Criminal Acts (O.R.C. § 2307.60)
### Against Defendants Duckett, Burks, and Herzog

134.    Plaintiffs restate and incorporate the allegations in the preceding paragraphs.

135.    Defendants violated O.R.C. § 2921.05, which prohibits any person from, purposely and by threat of harm, retaliating against a public servant for discharging his or her duties.  They also violated O.R.C. § 2921.03, which prohibits any person from, knowingly and by threat of harm, using a materially false writing for a malicious person or in bad faith to influence, intimidate or

hinder a public servant. Defendant Herzog violated O.R.C. § 2921.45, which prohibits any public servant from using his or her office to deprive any person of a constitutional right.

136.    As a direct result of Defendants' unlawful conduct, Plaintiffs have suffered substantial damages and are entitled to judgment.

137.    Defendants acted with malice, recklessness, and a conscious disregard for Plaintiffs' rights.

### Count 7 – Retaliation in Violation of Public Policy
### Against Defendants WCPD, Township, and Trustees

138.    Plaintiffs reallege the foregoing paragraphs as if fully rewritten herein.

139.    There are clear public policies expressed in Ohio law which prohibit employers from retaliating against an employee for making a reasonable complaint of violations of public records laws and for seeking legal counsel.

140.    Retaliating against an employee, including through constructive discharge, for making a reasonable complaint of violations of public records laws and for seeking legal counsel would jeopardize and violate these clearly established public policies.

141.    Defendants Township, WCPD, and Trustees maliciously and willfully retaliated against Plaintiffs by creating a hostile work environment, making disparaging statements about them, and constructively discharging them.

142.    Defendants Township, WCPD, and Trustees' actions were willful, wanton and malicious in nature.

143.    As a direct result of Defendants' unlawful conduct, Plaintiffs have suffered substantial damages and are entitled to judgment.

144.    Defendants Township, WCPD, and Trustees acted with malice, recklessness, and a conscious disregard for Plaintiffs' rights.

23

**WHEREFORE**, Plaintiffs demand judgment against Defendants West Chester Township, West Chester Township Board of Trustees, West Chester Township Police Department, Larry D. Burks, Ann Becker, Mark S. Welch, Lee Wong, Chief Joel Herzog, and Donald E. Duckett, and each of them, jointly and severally, as follows:

a.      A judgment declaring that Defendants' actions retaliating against Plaintiffs Hensley and Gutman constituted a violation of the First and Fourteenth Amendments of the United States Constitution;

b.      That Plaintiffs' pension be adjusted to compensate for Defendants' discrimination and retaliation;

c.      That Defendants be enjoined from further unlawful activity;

d.      That Plaintiffs be awarded all lost pay and benefits, and front pay;

e.      That Plaintiffs be awarded compensatory damages;

f.      That Plaintiffs be awarded liquidated damages;

g.      That Plaintiffs be awarded punitive damages;

h.      That Plaintiffs be awarded reasonable attorneys' fees and costs;

i.      That Plaintiffs be awarded prejudgment interest;

j.      That Plaintiffs be compensated for the adverse tax consequences of receiving a lump sum award rather than their compensation and benefits over several, separate tax years; and

k.      That Plaintiffs be awarded all other legal and equitable relief to which they may be entitled.

Respectfully submitted:


/s/ Elizabeth S. Tuck
Elizabeth S. Tuck (0076542)
THE TUCK FIRM, LLC
810 Sycamore St., 4th Floor
Cincinnati, OH  45202
Phone: (513) 545-6781
Fax: (513) 263-9081
*lisa@tuckfirm.com*

Brian J. Butler
MEZIBOV BUTLER
615 Elsinore Place, Suite 105
Cincinnati, OH 45202
tel: 513.621.8800 / fax: 513.621.8833
*bbutler@mezibov.com*

Counsel for Plaintiff


## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

/s/ Elizabeth S. Tuck