**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Jamie L. Hensley, *et al*.,

        Plaintiffs,                        Case No.  1:21cv373

        v.                             Judge Michael R. Barrett

Wester Chester Township, *et al*.,

        Defendants.

## OPINION & ORDER

This matter is before the Court upon Defendants' Motions to Dismiss.  (Docs. 25, ]26, 27, 28, 29, 32).  Plaintiffs have filed Responses (Docs. 34, 35, 36, 37, 43); and Defendants have filed Replies (Docs. 38, 39, 40, 41, 46).

## I.    BACKGROUND

The following factual background is taken from the Amended Complaint filed by Plaintiffs Jamie Hensley and Joseph Gutman.  Plaintiffs are former police officers with the West Chester Township Police Department.  (Doc. 21, PAGEID 120).  Both officers began their careers with the police department in the 1990s and rose to the rank of Captain.  (Id., PAGEID 120).  Defendant Joel Herzog is the Chief of the Police Department.  (Id., PAGEID 121).  Plaintiffs claim that on multiple occasions Herzog made sexist, racist and anti-Muslim comments.  (Id., PAGEID 121-22).  Plaintiffs also claim that Herzog hired a female administrative assistant who dressed and acted unprofessionally.  (Id., PAGEID 122-23).  For example, Plaintiffs claim that the administrative assistant wore thigh-high skirts, stiletto heels, low-necked tops, and short shorts with a midriff top to work.  (Id., PAGEID 122).  Plaintiffs claim the administrative assistant flirted with Gutman and would

make up reasons to linger in the office after hours with Hensley. (Id., PAGEID 123). Plaintiffs brought these issues to the attention of Herzog. (Id., PAGEID 123). Plaintiffs participated in an informal investigation, but declined to file a formal complaint. (Id., PAGEID 123). Following the investigation, the administrative assistant no longer wore revealing clothes to work and maintained a professional relationship with Plaintiffs. (Id., PAGEID 124). However, Plaintiffs claim that Herzog began retaliating against them by taking away their responsibilities, undermining them and scrutinizing their work. (Id., PAGEID 124).

In April of 2019, Plaintiffs learned that an anonymous caller claimed to have a photo of Herzog in blackface. (Id., PAGEID 125). Hensley met with Herzog and informed him that he recalled seeing the photo. (Id., PAGEID 125). Plaintiffs claim after that conversation, Herzog began making veiled threats to Hensley regarding the photo and the anonymous call. (Id., PAGEID 125).

Soon thereafter, Plaintiffs called a meeting with Defendant Larry Burks, who is the West Chester Township Administrator, and Joan Tumblison, who is the West Chester Township Human Resources Manager. (Id., PAGEID 125). Plaintiffs informed Burks and Tumblison that Hensley had seen the photo of Herzog in blackface; and described the sexist, racist and anti-Muslim comments made by Herzog. (Id., PAGEID 125). Burks told Plaintiffs to work it out with Herzog. (Id., PAGEID 126). After Plaintiffs informed Herzog of their meeting with Burks, Herzog began scrutinizing Plaintiffs' daily activities and gave Plaintiffs lower-than-usual ratings on their 2019 performance evaluations. (Id., PAGEID 126).

In January of 2020, Herzog and West Chester Township Human Resources Manager Tonya Charles met with Hensley and put him on a performance improvement plan. (Id., PAGEID 127). Herzog allowed Hensley to record the meeting on his phone. (Id., PAGEID 128). Part of Herzog's criticism of Hensley was a Facebook post made by Hensley's wife which referenced "cronyism" and another post about her own boss. (Id., PAGEID 128). Herzog insisted the posts were about him. (Id., PAGEID 128). Plaintiffs claim that Herzog was sensitive to allegations of cronyism because there was speculation that he promoted a sergeant due to his personal friendship with the sergeant. (Id., PAGEID 128). During the meeting, Herzog told Hensley he was accountable for his wife's speech, and asked Hensley to demote himself. (Id., PAGEID 128). In February of 2020, Hensley met with Burks and told him the performance improvement plan was retaliatory. (Id., PAGEID 129).

Two weeks later, Herzog initiated an internal affairs investigation of Hensley. (Id., PAGEID 129). The basis for the investigation was that Hensley was disrespectful and made false statements about his wife's Facebook post and whether he had deleted the recording of the January 2020 performance improvement plan meeting on his phone. (Id., PAGEID 130). Herzog and Burks directed the investigator to not investigate any concerns that Hensley had about Herzog retaliating against Plaintiffs. (Id., PAGEID 130).

On February 24, 2020, Hensley filed a formal internal complaint of retaliation and discrimination against Herzog. (Id., PAGEID 130). Plaintiffs attempted to meet with Burks, Herzog and the Human Resources Department to resolve the complaint, but they refused to meet with Plaintiffs at the direction of the West Chester Township Board of Trustees. (Id., PAGEID 131). Defendant Douglas Duckett, an attorney, was hired to

investigate Plaintiffs' complaint.   (Id., PAGEID 131).   Plaintiffs claim that Duckett intentionally distorted and mischaracterized interview statements, did not interview corroborating witnesses and selectively ignored what Plaintiffs told him.  (Id., PAGEID 134).   Plaintiffs claim that Duckett's written report made false statements and falsely accused Plaintiffs of wrongdoing and sexism.  (Id., PAGEID 136-37).   The Board of Trustees adopted the report and released it to the media.  (Id., PAGEID 137-38).  Hensley was informed that he would be terminated for dishonesty based on the report if he did not resign, so he resigned on June 23, 2020.  (Id., PAGEID 138).  Gutman was placed on a disciplinary plan based on the report.  (Id., PAGEID 139).  Gutman's working conditions became intolerable due to the hostility from Herzog, so he resigned on January 16, 2021. (Id., PAGEID 140).

Plaintiffs bring claims against West Chester Township; the West Chester Township Board of Trustees (Ann Becker, Mark Welch and Lee Wong) in their official and individual capacity; the West Chester Township Police Department; the West Chester Township Police Chief Joel Herzog, the West Chester Township Administrator Larry Burks; and Douglas Duckett.

Plaintiffs' claims are as follows: retaliation under Title VII (Count One); retaliation under Ohio law (Count Two); defamation (Count 3); First Amendment retaliation under 42 U.S.C. §1983 (Counts Four and Five); a violation of Ohio Revised Code § 2307.60 (Count Six); and retaliation in violation of public policy under Ohio law (Count Seven).

Defendants have filed separate Motions to Dismiss pursuant to Federal Rule 12(b)(6) which seek to dismiss all the claims against them for failure to state a claim.

## II.   ANALYSIS

### A.  Standard of Review

In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).   Federal Rule of Civil Procedure 8 provides that all pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).  Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*. (citing *Twombly*, 550 U.S. at 556).

### B.  West Chester Township, West Chester Police Department and Board of Trustees official capacity suits

In their Motion to Dismiss, Defendants West Chester Township and the West Chester Township Board of Trustees maintain that "West Chester Township" is not a proper party; and instead, the Board of Trustees is the proper entity to be named as a defendant in cases brought against the Township.  The Board of Trustees, who have been named in their individual and official capacities, maintain that the claims against

them in their official capacities are redundant with the claims against the Township and should be dismissed.

An official-capacity suit against a government official is the equivalent of an action against the governmental entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). When a complaint names both an official-capacity defendant and the entity of which the government official is an agent, the claims are "redundant." *Jackson v. Shelby Cty. Gov't*, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008). As such, the official capacity claim against individual government official can be dismissed. *See, e.g., Faith Baptist Church v. Waterford Twp*., 522 F. App'x 322, 327 (6th Cir. 2013) ("Having sued Waterford Township, the entity for which [the prosecuting attorney] was an agent, the suit against Bedell in his official capacity was superfluous."); *cf. Becker v. Bd. of Trustees Clearcreek Tp*., Case No. 3:05CV00360, 2008 WL 4449375, *5 (S.D. Ohio Sept. 30, 2008) (in a case where the township was not named as a party, the proper party for claims against township administrator was township board of trustees). Therefore, West Chester's Motion to Dismiss is DENIED to the extent that it seeks to dismiss "West Chester Township." However, the Motion to Dismiss filed by the West Chester Township Board of Trustees is GRANTED to the extent that it seeks to dismiss the claims against the individually named Board of Trustees in their official capacity.

Finally, Defendant West Chester Police Department maintains that it is merely a department of West Chester Township with no independent legal status; and therefore, it cannot be sued. Under Ohio law, a township police department is not *sui juris*. *Pinkins v. Mahoning Cnty. Task Force*, 176 N.E.3d 76, 80 (Ohio Ct. App. 2021) (citing cases).

Therefore, the West Chester Police Department's Motion to Dismiss is GRANTED; and the West Chester Police Department is DISMISSED as a party.

### C. Retaliation (Counts One and Two)

Plaintiff brings a claim of retaliation under Title VII and Ohio law against West Chester Township; and claims of aiding and abetting retaliation under Ohio law against Duckett, Herzog, Burks, the Board of Trustees in their individual capacities and West Chester Township.[1]

Title VII "prohibits retaliatory conduct by an employer when an employee engages in protected activity." *Brown v. VHS of Michigan, Inc*., 545 F. App'x 368, 373 (6th Cir. 2013); *see also* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."). Similarly, Ohio Revised Code § 4112.02(I) makes it unlawful "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice ... or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding or hearing [regarding such discriminatory actions]." In addition, Ohio Revised Code § 4112.02(J) makes it unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with

---

[1]Plaintiffs also brought these claims against the West Chester Police department and the individually named the Board of Trustees in their official capacity, but as discussed above, these parties are dismissed.

this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice."

"Because the Ohio Supreme Court has held that an action under Ohio Revised Code § 4112 mirrors that under Title VII, *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196, 421 N.E.2d 128 (Ohio 1981), [the Court] will analyze plaintiff's state and federal claims of illegal retaliation solely under Title VII." *Abbott v. Crown Motor Co*., 348 F.3d 537, 541 (6th Cir. 2003).

While the parties have recited the elements of a *prima facie* case under Title VII in their briefs, Plaintiff is not required to plead facts establishing a *prima facie* case under Title VII in order to state a claim for relief. *See Keys v. Humana, Inc*., 684 F.3d 605, 609 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 510-12 (2002)). "The prima facie case . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510. Instead, "the ordinary rules for assessing the sufficiency of a complaint apply." *Kinney v. McDonough*, No. 21-1414, 2022 WL 223633, at *6 (6th Cir. Jan. 26, 2022) (quoting *Swierkiewicz*, 534 U.S. at 511). That is, "only 'a short and plain statement of the claim showing that the pleader is entitled to relief'" is required. *Id*. (quoting *Swierkiewicz*, 534 U.S. at 508 (quoting Fed. R. Civ. P. 8(a)(2)).

### 1. West Chester Township

West Chester Township argues that Plaintiffs have failed to allege a causal connection between Plaintiffs' protected activity and any adverse employment action.

The Court rejects this argument. As this Court has explained, at this stage of the litigation:

> To plausibly allege a causal connection between protected activity and an adverse action, a plaintiff must put forth some fact creating an inference that

the adverse action would not have occurred without the employee first engaging in protected activity. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). This causal link can be shown two ways, either (1) through direct evidence or (2) through "knowledge coupled with a closeness in time that creates an inference of causation." *Id*. at 566. There is no single factor that is dispositive in establishing a causal connection, but "evidence that the defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Id*.; *see also Abbott*, 348 F.3d at 542-43 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981)).

*Sizemore v. Edgewood Bd. of Educ.*, No. 1:19-CV-555, 2020 WL 1904726, at *8 (S.D. Ohio Apr. 17, 2020).

Here, Plaintiffs allege that "[a]fter Plaintiffs participated in the investigation concerning [Herzog's administrative assistant's] conduct, Defendant Herzog retaliated against them by taking away responsibilities, excluding them from decisions, undermining them to their subordinates, and scrutinizing how they managed their respective bureaus day-to-day." (Doc. 21, PAGEID 124). Plaintiffs explain that after they complained to Burks about this retaliation, and informed Burks of sexist and racist jokes made by Herzog, "Herzog required them to tell [his administrative assistant] whenever they left the building" and Herzog gave them performance evaluations "lower than they had ever received, impacting their pay." (Doc. 21, PAGEID 126). Plaintiffs also claim that "Defendants ramped up their retaliation against Hensley by placing him on a performance improvement plan in January 2020" and Herzog initiated a "bogus" internal affairs investigation of Hensley. (Doc. 21, PAGEID 127, 129). When Hensley filed a formal written complaint of retaliation and discrimination by Herzog on February 24, 2020, Plaintiffs claim that Burks and West Chester Township hired Duckett to shield themselves instead of conducting an unbiased investigation. (Doc. 21, PAGEID 130-31). Plaintiffs

allege that the investigation by Duckett was intended to "set the stage to terminate Plaintiffs under false pretenses" and "punish Plaintiffs for their protected activity." (Doc. 21, PAGEID 134). These alleged facts create an inference that the adverse actions identified in the Amended Complaint would not have occurred without Plaintiffs first engaging in protected activity. Therefore, to the extent that it seeks to dismiss Plaintiffs' claims of retaliation under Title VII and Ohio law, West Chester Township's Motion to Dismiss is DENIED.

### 2. **Herzog, Burks, Duckett and the Board of Trustees**

The Court now turns to the claims of retaliation and aiding and abetting retaliation brought against Herzog, Burks, Duckett and the Board of Trustees in their individual capacities. These claims are brought under Ohio law. While "an individual cannot be held personally liable for violations of Title VII," *Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012), a defendant need not be an "employer" in order to be subject to liability for discriminatory retaliation under Chapter 4112. *Parker v. Strawser Constr., Inc*., 307 F. Supp. 3d 744, 753 (S.D. Ohio 2018); *see also Glass v. Tradesmen Int'l, LLC*, 505 F. Supp. 3d 747, 762 (N.D. Ohio 2020) ("O.R.C. § 4112.02(J) does provide for *employees* ... to be held liable for aiding and abetting its *employer's* discriminatory or retaliatory practices.") (quoting *Siwik v. Cleveland Clinic Foundation*, No: 1:17-cv-1063, 2019 WL 1040861, at *27 (N.D. Ohio Mar. 5, 2019) (emphasis added in *Glass*)). To be held liable for aiding and abetting under Ohio Revised Code § 4112.02(J), the employee must be "involved in or actually [have] made the decision to [discriminate or] retaliate against [the employee]." *Oster v. Huntington Bancshares Inc*., Case No. 2:15-CV-2746, 2017 WL

2215462, at *22 (S.D. Ohio May 19, 2017) (quoting *Cummings v. Greater Cleveland Reg'l Transit Auth.*, 88 F. Supp. 3d 812, 820 (N.D. Ohio 2015)).

Herzog and Burks maintain that these retaliation claims against them should be dismissed because they are entitled to statutory immunity under Ohio Revised Code § 2744.  This provision of Ohio law provides absolute immunity to employees of political subdivisions against civil liability, with some exceptions.  *Myers v. City of Centerville, Ohio*, 41 F.4th 746, 766 (6th Cir. 2022) (citing Ohio Rev. Code § 2744.03(A)(6)).[2] Plaintiffs argue that one of the exceptions applies here.  Plaintiffs explain that Herzog and Burks acted "with malicious purpose, in bad faith, or in a wanton or reckless manner," and therefore they are not entitled to immunity under Ohio Revised Code § 2744.03(A)(6)(b). (Doc. 35, PAGEID 272).  In support, Plaintiffs point to the allegation in the Amended Complaint that "Defendants acted with malice, recklessness, and a conscious disregard for Plaintiffs' rights."  (See Doc. 21, PAGEID 142).

---

[2]The statute provides that an employee of a political subdivision is immune from liability unless one of the following applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

Ohio Rev. Code § 2744.03.

The Court acknowledges that "a plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). However, at the same time, in this context, a plaintiff need not "'affirmatively demonstrate an exception to immunity . . . in his complaint' to succeed." *Myers v. City of Centerville, Ohio*, 41 F.4th 746, 766 (6th Cir. 2022) (quoting *Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020)). Instead, in order to reject the argument that the immunity exception applies, the Court must find that the complaint is "'devoid of [allegations] tending to show that the [defendants] acted'" in at least bad faith." *Id*. (quoting *Novak v. City of Parma*, 932 F.3d 421, 437 (6th Cir. 2019)) (quoting *Irving v. Austin*, 138 Ohio App.3d 552, 741 N.E.2d 931, 934 (Ohio Ct. App. 2000)).

Here, the Amended Complaint is not devoid of such allegations. Plaintiffs have alleged that when Plaintiffs complained about Herzog's administrative assistant's inappropriate dress and behaviors, "Herzog started a paper trail targeting Captain Gutman with a memorandum that grossly misstated the content, tone and nature of the Captains' concerns, drastically downplayed Ms. Freeman's behavior, and intentionally omitted important, corroborating details." (Doc. 21, PAGEID 123). Plaintiffs claim that after Herzog completed the informal handling of the complaint about the administrative assistant, he retaliated against Plaintiffs by taking away responsibilities and informed Human Resources this was because Plaintiffs had "attacked" and "betrayed" him. (Doc. 21, PAGEID 124). Plaintiffs allege that after they met with Herzog and asked him to stop his sexist or racist jokes or remarks in the workplace, Herzog required them to tell his administrative assistant whenever they left the building. (Doc. 21, PAGEID 126).

According to Plaintiffs, Herzog gave them lower performance evaluations because they were not "friendly enough" his administrative assistant. (Doc. 21, PAGEID 126). Plaintiffs also allege that Herzog placed Hensley on a performance improvement plan in January of 2020 based on "not meeting expectations" since April of 2019, but Hensley had never been informed that he was not meeting performance standards. (Doc. 21, PAGEID 127). Based on these allegations, the Court finds that Plaintiffs have adequately alleged that Herzog acted in "at least bad faith." *See Myers*, 41 F.4th 746 at 766. Therefore, to the extent that it seeks to dismiss Plaintiffs' claims of retaliation and aiding and abetting retaliation under Ohio law, Herzog's Motion to Dismiss is DENIED.

With regard to Burks, Plaintiffs explain that the exception to immunity under Ohio Rev. Code § 2744.03(A)(6) rests on their allegations that Burks abrogated his responsibility to prevent a racist and sexist work environment, and participated in nearly every materially adverse action against Plaintiffs, thereby enabling and directing Herzog's retaliation. (Doc. 37, PAGEID 317). The Court notes that there are factual allegations in the Amended Complaint to support this argument. Plaintiffs allege that after they met with Burks to complain about Herzog's behavior and retaliation, Burks did not take any steps to investigate or remedy their concerns, and instead told Plaintiffs to "work it out" with Herzog themselves. (Doc. 21, PAGEID 126). Plaintiffs allege that Burks authorized Hensley's performance improvement plan in January of 2020, even though Burks knew Herzog was retaliating against Hensley. (Doc. 21, PAGEID 128). Plaintiffs also allege that Burks permitted Herzog to conduct the internal affairs investigation of Hensley in February of 2020 even though Burks knew the investigation was retaliatory. (Doc. 21, PAGEID 129). Finally, Plaintiffs allege that Burks conspired with Duckett to ensure that

his investigation could be used to justify further retaliation instead of investigating Plaintiffs' concerns.  (Doc. 21, PAGEID 132, 133).  Based on these allegations, the Court finds that Plaintiffs have adequately alleged that Burks acted in "at least bad faith."  *See Myers*, 41 F.4th 746 at 766.  Therefore, to the extent that it seeks to dismiss Plaintiffs' claims of retaliation and aiding and abetting retaliation under Ohio law, Burks' Motion to Dismiss is DENIED.

As to the claims against Duckett for aiding and abetting discrimination and retaliation, Duckett initially argued that Plaintiffs failed to exhaust their administrative remedies against Duckett.  However, subsequent to the briefing of Duckett's Motion to Dismiss, Plaintiffs filed a notice that they had received the Letters of Determination from the Ohio Civil Rights Commission ("OCRC").  (Doc. 46).  In the Letters of Determination, the OCRC states that it does not have jurisdiction over Plaintiffs' charges because there is "no employee/employer relationship."  (Doc. 46-1, Doc. 46-2).

The Court notes that under the circumstances, Plaintiffs' failure to file a charge with the OCRC before filing their complaint in this Court is understandable.  Chapter 4112 was amended by the passage of the Employment Law Uniformity Act, Ohio House Bill 352 after the discriminatory acts in this case took place, but before Plaintiffs filed their original complaint on June 3, 2021.  (Doc. 1).  Before these amendments to Chapter 4112 took effect on April 15, 2021, plaintiffs were not required to exhaust their administrative remedies under Ohio law.  *Lott v. Kmart*, No. 2:13-CV-990, 2013 WL 6670381, at *5 (S.D. Ohio Dec. 18, 2013), *adopted*, No. 2014 WL 234665 (S.D. Ohio Jan. 22, 2014) ("Although discrimination claims brought under Ohio Revised Code Section 4112.02 are analyzed under the same framework as Title VII claims, exhaustion of administrative remedies is

not required in actions under Section 4112.") (citing *Elek v. Huntington Nat'l Bank*, 60 Ohio St.3d 135, 137, 573 N.E.2d 1056 (Ohio 1991); *see also Franko v. City of Cleveland*, 654 F. Supp. 2d 711, 715 (N.D. Ohio 2009) (citing cases and explaining that discrimination claims brought under Ohio Revised Code § 4112.02 are analyzed under the same evidentiary framework as Title VII claims, yet do not require exhaustion of administrative remedies.).  Under the new amendments, a plaintiff alleging a violation of section 4112.02 must now first file a charge with the OCRC.  *See* Ohio Rev. Code § 4112.052(a).  However, the Court finds that the amendments to Chapter 4112 do not bar Plaintiffs' claims in this instance.  This Court has already observed that "the new law makes no mention of retroactivity," and therefore does not apply to claims arising before the effective date.  *See Erwin v. Honda N. Am., Inc.*, No. 2:20-CV-4350, 2022 WL 3716561, at *10, n.7 (S.D. Ohio Aug. 29, 2022) (citing *Bielat v. Bielat*, 721 N.E.2d 28, 32–33 (Ohio 2000) (discussing constitutional and statutory presumptions against retroactive legislation in Ohio)).  Therefore, Plaintiffs' failure to obtain a Letter of Determination before filing suit is not a bar to their claims against Duckett for retaliation and aiding and abetting retaliation under Chapter 4112.

To the extent that Duckett argues that Plaintiffs' claims for aiding and abetting discrimination and retaliation are barred by an absolute litigation privilege under Ohio law, the Court notes that this litigation privilege only extends to statements made during judicial proceedings or quasi-judicial proceedings, such as an investigation of a complaint by an OCRC.  *Accord Newman v. Univ. of Dayton*, 172 N.E.3d 1122, 1135-36 (Ohio Ct. App. 2021).  Based on the allegations in the Amended Complaint, this type of privilege would be inapplicable to Plaintiffs' claims. Therefore, to the extent that it seeks to dismiss

Plaintiffs' claims of retaliation and aiding and abetting under Ohio law, Duckett's Motion to Dismiss is DENIED.

Finally, as to the claims against the Board of Trustees in their individual capacities, the Board of Trustees argue that Plaintiffs have failed to state a claim for retaliation against them because they have not alleged a causal connection between the protected activity and any employee discipline imposed by an individual Trustee. Plaintiffs respond that they have alleged adequate facts to demonstrate that the Board of Trustees aided, abetted, incited, compelled, or coerced acts prohibited by Chapter 4112.

As explained above, a causal connection can be shown two ways, either "(1) through direct evidence or (2) through 'knowledge coupled with a closeness in time that creates an inference of causation.'" *Sizemore v. Edgewood Bd. of Educ.*, No. 1:19-CV-555, 2020 WL 1904726, at *8 (S.D. Ohio Apr. 17, 2020) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)). While there no single factor which is dispositive in establishing a causal connection, "evidence that the defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Id*.

Plaintiffs allege that the Trustees "were fully apprized of all Plaintiffs relayed to Defendant Duckett during the investigation, as well as Defendant Herzog admitting to racist and sexist behavior, and all of the details regarding their complaints in 2018, 2019, and 2020. Knowing these things, they directed Defendant Duckett to prepare a report and recommendations for public consumption that they knew contained false accusations about Plaintiff, warped the investigative evidence to justify additional retaliation, and would ultimately result in Plaintiffs' termination or resignation." (Doc. 21, PAGEID 137).

The Court finds that these factual allegations are enough to raise a right to relief above the speculative level so that Plaintiffs' claim against the Trustees is plausible on its face. Therefore, to the extent that they seek to dismiss Plaintiffs' claims of retaliation and aiding and abetting retaliation under Ohio law, the Motion to Dismiss filed by the West Chester Board of Trustees in their individual capacities is DENIED.

### D. Defamation (Count Three)

Plaintiffs bring their claims for defamation against Defendants Herzog, Burks, Duckett and the Board of Trustees in their individual capacities. Plaintiffs' claims are brought pursuant to Ohio law.

In Ohio, the tort of defamation has four elements: "a false and defamatory statement concerning another; unprivileged publication to a third party; fault amounting to at least negligence by the publisher; actionability of the statement irrespective of a special harm or the existence of a special harm." *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.*, 81 Ohio App.3d 591, 601, 611 N.E.2d 955, 962 (1992) (quoting 3 Restatement of the Law 2d Torts § 558, pg. 155 (1977)). If the party defamed is either a public official or public figure, the plaintiff must also prove actual malice to recover on a defamation claim. *Gilbert v. WNIR 100 FM*, 142 Ohio App. 3d 725, 735–36, 756 N.E.2d 1263, 1270 (Ohio Ct. App. 2001) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334–336, 94 S.Ct. 2997, 3004–3005, 41 L.Ed.2d 789, 802–803 (1974). Ohio courts have held that police officers are public officials. *Williams v. Gannett Satellite Info. Network, Inc.*, 162 Ohio App. 3d 596, 600, 834 N.E.2d 397, 401 (Ohio Ct. App. 2005). Therefore, as public officials, Plaintiffs "must show by clear and convincing evidence that the statements were made with actual malice, that is, with knowledge that the statements were false or

with reckless disregard of whether they were false or not." *Daubenmire v. Sommers*, 156 Ohio App.3d 322, 343, 805 N.E.2d 571, 587 (Ohio Ct. App. 2004) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)).

While this Court must apply Ohio's substantive law to this diversity action, the pleading requirements remain governed by federal law. *Green v. Mason*, 504 F. Supp. 3d 813, 831 (S.D. Ohio 2020). "Under federal pleading requirements, a complaint asserting a defamation claim as to which the actual malice standard applies must 'set forth facts establishing [that the] statements [were] made with malice' to avoid dismissal. *Id*. (quoting *Carovac v. Lake Cnty. Bd. of Dev.'l Disabilities/Deepwood*, No. 1:19-cv-2344, 2020 WL 5423966, *5 (N.D. Ohio Sept. 9, 2020)).

## 1. **Herzog**

Herzog maintains the defamation claim against him should be dismissed because Plaintiffs have failed to allege the factual detail necessary to state a claim. The defamation claim against Herzog is based on Herzog accusing Hensley of lying to him about the Facebook post made by Hensley's wife and Hensley lying about whether he had deleted the recording of the January 2020 meeting from his phone. (Doc. 21, PAGEID 136). Plaintiffs also allege that Herzog made a false statement to "community leaders" that Gutman had called his doctor a terrorist. (Doc. 21, PAGEID 139). Plaintiffs allege that Herzog "made and published the false statements knowing or with constructive knowledge that the statements were false or with negligence as to falsity." (Doc. 21, PAGEID 143). Based on the allegations in the Amended Complaint, Herzog knew that the statements about the Facebook post and the recording of the meeting were false because he knew Hensley was not actually lying, and instead used the statements to

18

initiate a retaliatory internal affairs investigation.  (Doc. 21, PAGEID 129).  The Court finds these allegations are sufficient to establish that the statements were made with malice in order to avoid dismissal.

Herzog maintains he is entitled to a qualified privilege for statements made related to Plaintiffs' employment.  As this Court has explained:

> A qualified privilege based on a "common interest" often arises in the context of an employment setting. Ohio law holds, for example, that "[g]enerally, a communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by qualified privilege." *Sygula v. Regency Hosp. of Cleveland E.*, 64 N.E.3d 458, 467 (Ohio Ct. App. 2016) (quoting *Kanjuka v. MetroHealth Med. Ctr.*, 151 Ohio App.3d 183, 783 N.E.2d 920, 931 (2002)).

*Green v. Mason*, 504 F. Supp. 3d 813, 830 (S.D. Ohio 2020).  The "elements necessary to establish the privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only."  *Id.* (quoting *Kanjuka*, 783 N.E.2d at 931 (internal quotations omitted)).  Once a defendant demonstrates the existence of qualified privilege, the plaintiff can only prevail upon a showing of actual malice.  *Knox v. Neaton Auto Prod. Mfg., Inc.*, 375 F.3d 451, 460 (6th Cir. 2004) (citing *Evely v. Carlon Co., Div. of Indian Head, Inc.*, 4 Ohio St.3d 163, 165, 166, 447 N.E.2d 1290, 1293 (Ohio 1983)).

The two statements which form the basis of the defamation claim against Herzog— Herzog accusing Hensley of lying to him about the Facebook post and Herzog accusing Hensley of lying about the recording of the January 2020 meeting—were contained in Duckett's report.  (Doc. 21, PAGEID 135).  Therefore, the privilege ostensibly applies, but Plaintiffs allege that the statements were not made by Herzog in good faith and were instead used to initiate a retaliatory internal affairs investigation.  (Doc. 21, PAGEID 129).

Moreover, "[i]n a qualified privilege case, "actual malice" is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs v. Frank*, 60 Ohio St. 3d 111, 116, 573 N.E.2d 609, 614 (Ohio 1991). The Court has already found that Plaintiffs have adequately alleged facts to support a finding that Herzog made these statements with actual malice.  In addition, the Court notes that Plaintiffs allege that Herzog knew his false statements would appear in Duckett's report and that the report would be published to the press. (Doc. 21, PAGEID 137).  Therefore, Herzog is not entitled to a qualified privilege at this stage of the proceedings.

Herzog also argues he is entitled to statutory immunity under Ohio Revised Code § 2744 for the claims brought against him in his official capacity.  As explained above, a plaintiff is "not required to anticipate a not-yet-raised affirmative defense of political subdivision immunity, much less plead facts to establish an exception to immunity, in order for her claims to survive a Civ.R. 12(B)(6) challenge." *Fisher v. Ahmed*, 153 N.E.3d 612, 622 (Ohio Ct. App. 2020).  Instead, as explained above, all that is required are allegations which would support a finding of bad faith.  *See Myers*, 41 F.4th 746 at 766. The Court finds that the allegations meet that standard, and therefore, statutory immunity does not apply at this stage of the proceedings.

Therefore, to the extent that it seeks to dismiss Plaintiffs' claims of defamation under Ohio law, Herzog's Motion to Dismiss is DENIED.

### 2. Burks

In his Motion to Dismiss, Burks argues that the Amended Complaint fails to allege that he made any specific statement which defames Plaintiffs.  Burks also argues that he

is entitled to statutory immunity under Ohio Revised Code § 2744.03(A)(6), because Plaintiffs have not alleged that he acted "with malicious purpose, in bad faith, or in a wanton and reckless manner."

In their Amended Complaint, Plaintiffs claim Burks hired Duckett—a biased investigator—to "allow Defendant Herzog's discriminatory and retaliatory conduct to go unchecked and shield themselves against Plaintiffs' claims of their unlawful conduct." (Doc. 21, PAGEID 131).  Plaintiffs allege Burks conspired with Duckett "in bad faith" to write a report which would be made public and be used to justify "further retaliatory discharge, discipline, and reputational damage."  (Doc. 21, PAGEID 132).  Plaintiffs claim that Burks directed Duckett to distort the facts uncovered in his investigation directed "to prepare a report and recommendations for public consumption that they knew contained false accusations about Plaintiffs, warped the investigative evidence to justify additional retaliation, and would ultimately result in Plaintiffs' termination or resignation."  (Doc. 21, PAGEID 137).  Plaintiffs claim that Burks repeated and published Duckett's report in the press "knowing it contained multiple falsehoods about Plaintiffs and released it while other members of the department were still coming forward to corroborate Plaintiffs' allegations. Plaintiffs claim that Defendants intentionally did not investigate those additional complaints until after they released the incomplete and defamatory report to the press to make sure they could act against Plaintiffs before more information surfaced or was published that would corroborate Plaintiffs' versions of events and call the report into question.  (Doc. 21, PAGEID 137).

The Court finds that at the motion to dismiss stage of the proceedings, these allegations set forth sufficient facts to establish that Burks made the false statements

about Plaintiffs with malice. Under Ohio law: "As a general rule, all persons who cause or participate in the publication of libelous or slanderous matter are responsible for such publication * * *. Hence, one who requests, procures, or aids or abets, another to publish defamatory matter is liable as well as the publisher." *Gibson Bros. v. Oberlin Coll.*, 187 N.E.3d 629, 645 (Ohio Ct. App. 2022) (quoting *Cooke v. United Dairy Farmers, Inc.*, 2003 WL 21389646) (Ohio Ct. App. June 17, 2003) (emphasis in original). In addition, the Court finds that Plaintiffs have included allegations in the Amended Complaint tending to show that Burks acted "in at least bad faith." *See Myers*, 41 F.4th 746 at 766. As such, statutory immunity under Ohio Revised Code § 2744.03(A)(6) does not apply at this stage of the proceedings.

Therefore, to the extent that it seeks to dismiss Plaintiffs' claims of defamation under Ohio law, Burks' Motion to Dismiss is DENIED.

### 3. Duckett

In his Motion to Dismiss, Duckett maintains that Plaintiffs have failed to state a claim against him for defamation because under Ohio law, investigative reports provided by an attorney to a client are not considered "published." While that may be the case, Plaintiffs have alleged that Duckett was not serving in the capacity as counsel to West Chester Township. (Doc. 21, PAGEID 131). Plaintiffs claim that Duckett was instead hired as a third-party human resources investigator; and Duckett knew that any written report he prepared would be deemed a public record. (Doc. 21, PAGEID 131-32). Viewing these allegations in a light most favorable to Plaintiffs, the Court concludes that Duckett was not serving in the traditional role of an attorney and therefore cannot claim that the report was not "published."

Duckett argues that even if the report is considered "published," he is entitled to an absolute privilege when disclosing the results of his investigation to West Chester Township.

Under Ohio law, "[s]tatements made 'in a written pleading or brief, or in an oral statement to a judge or jury in open court, is absolutely privileged if it has some reasonable relation to the judicial proceeding in which it appears.'" *Morrison v. Gugle*, 142 Ohio App. 3d 244, 260, 755 N.E.2d 404, 416 (Ohio Ct. App. 2001) (quoting *Michaels v. Berliner*, 119 Ohio App.3d 82, 87 (Ohio Ct. App. 1997). However, "[i]n order for an extrajudicial communication to come within the cloak of absolute privilege it must be (1) made in the regular course of preparing for and conducting a proceeding that is contemplated in good faith and under serious consideration, (2) pertinent to the relief sought, and (3) published only to those directly interested in the proceeding." *Id*. (citing *Theiss v. Scherer*, 396 F.2d 646, 649 (6th Cir. 1968)). Based on the allegations in the Amended Complaint, this absolute privilege does not apply. While Hensley had informed Human Resources that he planned to meet with an attorney, there was no "proceeding" which was "contemplated in good faith and under serious consideration." *See Morrison v. Gugle*, 142 Ohio App. 3d 244, 260, 755 N.E.2d 404, 416 (Ohio Ct. App. 2001) (privilege does not extend to letter containing vague threat of some future litigation if the matter was not resolved).

Finally, Duckett argues that he is entitled to a qualified privilege for the statements because they were made as part of an investigation of an employee. As explained above, the "elements necessary to establish the privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a

proper manner and to proper parties only." *Green v. Mason*, 504 F. Supp. 3d 813, 830 (S.D. Ohio 2020).  Once a defendant demonstrates the existence of qualified privilege, the plaintiff can only prevail upon a showing of actual malice.  *Knox v. Neaton Auto Prod. Mfg., Inc.*, 375 F.3d 451, 460 (6th Cir. 2004) (citing *Evely v. Carlon Co., Div. of Indian Head, Inc.*, 4 Ohio St.3d 163, 165, 166, 447 N.E.2d 1290, 1293 (Ohio 1983)); *see also Bartlett v. Daniel Drake Mem. Hosp.*, 75 Ohio App. 3d 334, 340, 599 N.E.2d 403, 407 (Ohio 1991) ("In order to successfully assert a defamation claim against one whose statements are entitled to a qualified privilege, a plaintiff must show that in making the statements the 'defendant was moved by actual malice, such as ill will, spite, grudge or some ulterior motive.'") (quoting *Hahn v. Kotten*, 43 Ohio St.2d 237, 248, 331 N.E.2d 713, 721 (Ohio 1975).  Here, Plaintiffs allege "Duckett, Burks, and Trustees in bad faith conspired to ensure the investigation would be turned to focus on the Plaintiffs, with the intent of justifying further retaliatory discharge, discipline, and reputational damage." (Doc. 21, PAGEID 132).  The Court finds that these allegations are sufficient to avoid dismissal that this stage of the litigation.

Therefore, to the extent that it seeks to dismiss Plaintiffs' claims of defamation under Ohio law, Duckett's Motion to Dismiss is DENIED.

### 4.  **Board of Trustees**

In their Motion to Dismiss, the Board of Trustees argue that even though Plaintiffs are suing each Trustee in his or her individual capacity for defamation, they do not allege separate factual support for each Trustee.

With regards to the pleading standards in federal court:

Federal procedural law is clear that "Rule 9(b) does not apply to defamation claims; those claims need only be stated in accordance with Rule 8 of the

Federal Rules of Civil Procedure." *Conocophillips Co. v. Shaffer*, No. 3:05 CV 7131, 2005 WL 2280393, at *1 (N.D. Ohio Sept. 19, 2005); *see also Wright v. Sodexho Marriott Servs.*, 30 F. App'x 566, 567 (6th Cir. 2002) (holding that defamation claim is subject to Fed. R. Civ. P. 8(a)(2)). . . . in addition to requiring notice to the defendant, Rule 8 also contains a plausibility requirement under *Twombly* and *Iqbal*. So, the plaintiff must plead sufficient facts to plausibly establish that each element of a defamation claim is present.

*Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1092 (S.D. Ohio 2021).  As such, in terms of specificity, "[a] defamation complaint must allege the substance of the allegedly defamatory statements," but "need not ... set [them] out verbatim."  *Id*. at 1093 (quoting *Doe v. Univ. of Dayton*, No. 3:17-cv-134, 2018 WL 1393894, at *5 (S.D. Ohio Mar. 20, 2018)).

With regards to the Board of Trustees, Plaintiffs have alleged:

Defendants Trustees and Burks repeated and published Defendant Duckett's report in the press knowing it contained multiple falsehoods about Plaintiffs and released it while other members of the department were still coming forward to corroborate Plaintiffs' allegations.  Defendants intentionally did not investigate those additional complaints until after they released the incomplete and defamatory report to the press to make sure they could act against Plaintiffs before more information surfaced or was published that would corroborate Plaintiffs' versions of events and call the report into question.

The Trustees adopted Defendant Duckett's report and implemented his recommendations in full with knowledge or reckless disregard of the report's false and damaging statements of fact about Plaintiffs. The Trustees repeated several, such as both Plaintiffs being sexist, and Captain Hensley lying in office, in a public statement read to the press by Defendant Becker at a Trustee meeting and then distributed in writing to the media.

(Doc. 21, PAGEID 137-38).  The Court finds that even though Plaintiffs have not identified the specific Board of Trustees which made the defamatory statements, these allegations are sufficient at this stage of the litigation to state a claim for defamation against the Board of Trustees.

The Board of Trustees argue that even if Plaintiffs have plausibly alleged a claim for defamation, they are entitled to statutory immunity. However, the Court finds that Plaintiffs have included allegations in the Amended Complaint tending to show that the Board of Trustees acted "in at least bad faith." *See Myers*, 41 F.4th 746 at 766. As explained above, Plaintiffs allege that the Board of Trustees, along with Burks, "directed Defendant Duckett to prepare a report and recommendations for public consumption that they knew contained false accusations about Plaintiff, warped the investigative evidence to justify additional retaliation, and would ultimately result in Plaintiffs' termination or resignation." (Doc. 21, PAGEID 137). As such, statutory immunity under Ohio Revised Code § 2744.03(A)(6) does not apply at this stage of the proceedings.

Therefore, to the extent that it seeks to dismiss Plaintiffs' claims of defamation under Ohio law, the Board of Trustees' Motion to Dismiss is DENIED.

### E. First Amendment retaliation (Count Four and Five)

Plaintiffs bring their claims of First Amendment retaliation under 42 U.S.C. § 1983 against Herzog, Burks, the Board of Trustees in their individual capacities and West Chester Township.[3]

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Tuttle v. Oklahoma City*, 471 U.S. 808 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Bloch v. Ribar*, 156 F.3d 673, 677

---

[3]Plaintiffs also brought these claims against the West Chester Police department and the individually named Board of Trustees in their official capacity, but as discussed above, these parties are dismissed.

(6th Cir. 1998) and *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992)).

Defendants have not raised a challenge to the first requirement, so the Court will move to the second requirement. Plaintiffs allege a First Amendment violation. The First Amendment prohibits the government from "abridging the freedom of speech." U.S. Const. Amend. I. To prove retaliation under the First Amendment, a plaintiff must establish: (1) he or she engaged in activity the First Amendment protects; (2) he or she suffered an "adverse action," one that would dissuade "individuals of ordinary firmness" from doing "what they were doing;" and (3) that a causal link connects the First Amendment activity and the administrators' adverse actions. *Cunningham v. Blackwell*, 41 F.4th 530, 541 (6th Cir. 2022) (citations omitted).

In the Amended Complaint, Plaintiffs claim that Defendants retaliated against them in violation of the First Amendment based on social media posts made by Hensley's wife, and the reports of alleged discrimination by Herzog made by Plaintiffs. (Doc. 21, PAGEID 143, 145). Defendants argue that Plaintiffs' concerns were entirely about issues in the workplace, and therefore not protected by the First Amendment.

"[A]n individual's First Amendment rights as a public employee are narrower than those of the citizenry at large." *Haddad v. Gregg*, 910 F.3d 237, 244 (6th Cir. 2018) (citing *Mayhew v. Town of Smyrna, Tenn*., 856 F.3d 456, 462 (6th Cir. 2017). A public employee alleging First Amendment retaliation must satisfy three requirements to show constitutionally protected activity:

> First, the employee must speak on "matters of public concern." *Evans-Marshall v. Bd. of Educ.*, 624 F.3d 332, 337 (6th Cir. 2010) (citing *Connick*, 461 U.S. at 143 [103 S.Ct. 1684] [ ] ). Second, the employee must speak as a private citizen and not as an employee pursuant to his official duties.

> *Id*. at 338 (citing *Garcetti*, 547 U.S. at 421 [126 S.Ct. 1951] [ ] ). Third, the employee must show that his speech interest outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id*. (quoting *Pickering*, 391 U.S. at 568 [88 S.Ct. 1731] [ ] ).

*Id*. (quoting *Mayhew*, 856 F.3d at 462). "The question whether a public employee's speech is protected is a question of law for the court to decide." *Id*.

The Court concludes that Plaintiffs' reports of discrimination which form the basis of Plaintiffs' First Amendment retaliation claim in Count Five are "matters of public concern." As the United States Supreme Court has explained, "racial discrimination is inherently a matter of public concern." *Perry v. McGinnis*, 209 F.3d 597, 608 (6th Cir. 2000) (citing *Connick*, 461 U.S. at 148 n.8, 103 S.Ct. 1684); *see also Boulton v. Swanson*, 795 F.3d 526, 532 (6th Cir. 2015) (speech addresses a matter of public concern when it alleges discrimination of some form) (citing *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 181-82 (6th Cir. 2008)).

Hensley's claim in Court Four is that he was retaliated against as a result of his exercise of his First Amendment right of intimate association with his wife. The Sixth Circuit has explained the genesis of this right:

> In *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), the Supreme Court stated that one type of constitutionally protected freedom of association is the right "to enter into and maintain certain intimate human relationships [which] must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." The Supreme Court reasoned that the formation and preservation of certain types of "highly personal relationships" is necessary to secure individual liberty and suggested that marriage is such a relationship that must be protected from unwarranted state interference. *See id*. at 618–19, 104 S.Ct. 3244. Although the Supreme Court did not explain whether this right stems from the freedom of association under the First Amendment or the fundamental right to marry under the Due Process Clause of the Fourteenth Amendment, we have analyzed the right of

> intimate association under the First Amendment. *See Adkins v. Board of Educ.*, 982 F.2d 952, 955–56 (6th Cir.1993).

*Sowards v. Loudon Cnty., Tenn.*, 203 F.3d 426, 432 (6th Cir. 2000). Hensley alleges that his right to associate intimately with his wife was violated when Hensley was retaliated against based on social media posts made by Hensley's wife. This allegation supports a First Amendment claim of retaliation. *Accord Adkins v. Bd. of Educ.*, 982 F.2d 952, 955 (6th Cir. 1993) (superintendent's failure to extend Adkins's contract because of her marriage to the high-school principal supported her claim that her constitutional rights were violated).

Defendants question whether Plaintiffs have alleged that they suffered an adverse action or a causal connection. "The term 'adverse action' has traditionally referred to actions such as discharge, demotions, refusal to [h]ire, nonrenewal of contracts, and failure to promote." *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 303 (6th Cir. 2012) (quoting *Handy–Clay v. City of Memphis*, 695 F.3d 531, 545 (6th Cir. 2012) (internal quotation marks omitted) (alteration in original). However, the Sixth Circuit has recognized that "we are required to tailor[ ] our analysis under the adverse action prong to the circumstances of this specific retaliation claim." *Id.* (citing *Mezibov v. Allen*, 411 F.3d 712, 721 (6th Cir. 2005)). In this vein, the Sixth Circuit has explained: "'[S]ince there is no justification for harassing people for exercising their constitutional rights, [the effect on freedom of speech] need not be great in order to be actionable.'" *Thaddeus–X v. Blatter*, 175 F.3d 378, 397 (6th Cir.1999) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982)). In addition, Plaintiffs allege they were subject to constructive discharge in retaliation for exercising their constitutional rights. "To demonstrate constructive discharge, a plaintiff must adduce evidence to show that (1) 'the employer ... deliberately

create[d] intolerable working conditions, as perceived by a reasonable person,' (2) the employer did so 'with the intention of forcing the employee to quit' and (3) 'the employee ... actually quit.'" *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012) (quoting *Moore v. KUKA Welding Sys. & Robot Corp*., 171 F.3d 1073, 1080 (6th Cir. 1999)).

The Court finds that Plaintiffs have adequately plead both an adverse action and a causal connection. Plaintiffs allege Herzog placed Hensley on a performance improvement plan and asked him to agree to be demoted, in part, due to the Facebook post made by his wife. (Doc. 21, PAGEID 128). Plaintiffs allege that during Duckett's investigation, Herzog falsely accused Hensley of lying about his wife's Facebook post and the recording of the meeting where Herzog and Hensley discussed the post. (Doc. 21, PAGEDID 136). Plaintiffs also allege that Herzog falsely accused Gutman of racial discrimination. (Doc. 21, PAGEID 139). Plaintiffs allege that Defendants threatened Hensley that if he did not resign, he would be terminated for dishonesty on the basis of the investigation report. (Doc. 21, PAGEID 138). The Court finds that these actions would discourage a person of ordinary firmness from exercising their First Amendment rights. *Accord Larry v. Powerski*, 148 F. Supp. 3d 584, 600-601 (E.D. Mich. 2015) (finding defendant's allegedly retaliatory campaign of relentless scrutiny following the plaintiff's complaints of racial discrimination were sufficient to discourage a person of ordinary firmness from exercising her rights under the First Amendment).

Herzog, Burks and the Board of Trustees argue that even if Hensley has stated a claim for First Amendment retaliation, they are entitled to qualified immunity. However, as the Sixth Circuit has explained:

> Although a defendant's "entitlement to qualified immunity is a threshold
> question to be resolved at the earliest possible point, that point is usually

summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (cleaned up). "The reasoning for our general preference is straightforward: 'Absent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is "obvious" or "squarely governed" by precedent, which prevents us from determining whether the facts of this case parallel a prior decision or not' for purposes of determining whether a right is clearly established." *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)).

*Moderwell v. Cuyahoga Cnty., Ohio*, No. 20-3879, 2021 WL 1897949 (6th Cir. May 12, 2021). Accordingly, the Court declines to decide the issue of qualified immunity at this stage of the litigation.

West Chester Township argues that it has no liability because Hensley has failed to allege that it had a policy or practice which led to the deprivation of a constitutionally protected right.

Under *Monell v. Department of Social Services*, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("Respondent superior or vicarious liability will not attach under § 1983."). However, *Monell* liability may attach arising from a single action taken by a final policymaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Board of County Com'rs. of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404-405 (1997). This involves a showing of an illegal policy or custom by demonstrating that an official with final decision-making authority ratified illegal actions. *Alsaada v. City of Columbus*,

536 F. Supp. 3d 216, 270 (S.D. Ohio 2021) (citing *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020)).  As this Court has explained,

> An official acting with the final decision-making authority may ratify the unconstitutional acts of its employees in two ways. The first is through "affirmative approval of a particular decision made by a subordinate." *Feliciano v. City of Cleveland*, 988 F.2d 649, 650 (6th Cir. 1993).  The second is by "failing to meaningfully investigate and punish allegations of unconstitutional conduct." *Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020); *see also Wilson*, 2020 WL 981717, at *2 ("[T]he Sixth Circuit has held that municipal liability may attach when an official with final decision-making authority and a duty to know and act upon unconstitutional conduct fails to investigate or correct the unconstitutional conduct.").

*Id*. at 270–71.

Here, Plaintiffs allege that "[t]he commissioners are a duly-constituted body, legislative in nature, that have the final authority to set policy of the township."  (Doc. 21, PAGEID 144).  Plaintiffs further allege that "the commissioners authorized Defendant Burks, as the township administrator, and Defendant Herzog, as police chief, to establish government policy and to take acts and deliver edicts that represent official policy of the township."  (Doc. 21, PAGEID 144).  Plaintiffs explain that the Trustees, the township administrator, and Herzog were all individuals with final authority, and they intentionally forced Plaintiffs to resign.  (Doc. 21, PAGEID 138, 140).

The Court concludes that based on the foregoing, Plaintiffs have stated a plausible First Amendment retaliation claim against Herzog, Burks, the Board of Trustees in their individual capacities and West Chester Township.  Therefore, to the extent that they seek to dismiss Plaintiffs' Section 1983 claims, the Motions to Dismiss filed by Herzog, Burks, the Board of Trustees' and West Chester Township is DENIED.

### F. Ohio Revised Code § 2307.60 (Count Six)

Plaintiffs bring this claim against Defendants Herzog, Burks and Duckett.  Ohio

Revised Code § 2307.60 provides a mechanism for civil recovery for "[a]nyone injured in person or property by a criminal act." Proof of an underlying criminal conviction is not required by the statute. *Buddenberg v. Weisdac*, 161 Ohio St.3d 160, 162, 161 N.E.3d 603, 606 (Ohio 2020).

Plaintiffs claim that Herzog, Burks and Duckett violated the following underlying criminal statutes: (1) Ohio Revised Code § 2921.05, which prohibits any person from, purposely and by threat of harm, retaliating against a public servant for discharging his or her duties; and (2) Ohio Revised Code § 2921.03, which prohibits any person from, knowingly and by threat of harm, using a materially false writing for a malicious purpose or in bad faith to influence, intimidate or hinder a public servant. Plaintiffs also claim that Herzog violated Ohio Revised Code § 2921.45, which prohibits any public servant from using his or her office to deprive any person of a constitutional right.

The Court finds that Plaintiffs have failed to state a claim based on a violation of Ohio Revised Code § 2921.05, which provides: "No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness *who was involved in a civil or criminal action or proceeding* because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness." Ohio Rev. Code § 2921.05 (A) (emphasis added). There are no allegations in the Amended Complaint that Plaintiffs were involved in a civil or criminal action or proceeding.

Similarly, the Court finds that Plaintiffs have failed to state a claim based on a violation of Ohio Revised Code § 2921.03, which provides: "No person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or

otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant, a party official, or an attorney or witness *involved in a civil action or proceeding* in the discharge of the person's the duties of the public servant, party official, attorney, or witness."   Ohio Rev. Code § 2921.03 (A) (footnote omitted) (emphasis added).  Again, there are no allegations in the Amended Complaint that Plaintiffs were involved in a civil or criminal action or proceeding.

With regards to Ohio Revised Code § 2921.45, this statute provides:

(A) No public servant, under color of the public servant's office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right.

(B) Whoever violates this section is guilty of interfering with civil rights, a misdemeanor of the first degree.

Ohio Rev. Code § 2921.45.  The Court concludes that at this stage of the proceedings, the allegations in Plaintiffs' Amended Complaint support a claim that Herzog knowingly deprived Plaintiffs of their civil rights.  *Accord Seymour v. Miller*, No. 2:21-CV-313, 2022 WL 93327, at *9 (S.D. Ohio Jan. 10, 2022).

Therefore, to the extent that they seek to dismiss Plaintiffs' claims under Ohio Revised Code § 2307.60, the Motions to Dismiss filed by Herzog, Burks and Duckett are GRANTED as to the claims based on Ohio Revised Code § 2921.05 (retaliation) and Ohio Revised Code § 2921.03 (intimidation); but DENIED as to the claims Herzog based on Ohio Revised Code § 2921.45 (interfering with civil rights).

## G.  <u>Retaliation in violation of public policy (Count Seven)</u>

Plaintiffs bring their claim for a violation of public policy against West Chester Township only.  Plaintiffs claim that "there are clear public policies expressed in O.R.C

§149.011, §149.43(B), §149.43(C), and §149.351 which prohibit employers from retaliating against an employee for making a reasonable complaint of violations of records laws and for seeking legal counsel."  (Doc. 21, PAGEID 146).

To begin, the Court notes that "[m]any courts, both state and federal, 'have recognized that the statutory remedies provided by Revised Code Chapter 4112 adequately protect society's interests and adequately compensate an aggrieved employee for a violation of Ohio's discrimination laws.'"  *Jones v. Nat. Essentials*, 187 N.E.3d 594, 605 (Ohio Ct. App. 2022) (collecting cases).  Plaintiffs have not explained how the statutory remedies for their claims for retaliation under Ohio Revised Code § 4112 are inadequate.

Moreover, Plaintiffs have not established the "clarity element" of their public policy claim.[4]  Plaintiffs must identify some source of "clear public policy" to support their claim.  *Romero v. City of Middletown*, 479 F.Supp.3d 660, 671 (S.D. Ohio 2020).  This requires Plaintiffs to meet two requirements: (1) "*specifically* identify the sources, and also identify

---

[4]As this Court has explained:

Making a claim for wrongful discharge in violation of public policy—a *Greeley* claim—requires that a plaintiff establish each of four elements: (1) that a *clear* public policy existed and was manifested either in a state or federal constitution, statute, or administrative regulation, or in the common law (the "clarity element"); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize that public policy (the "jeopardy element"); (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the "causation element"); and (4) that the employer lacked an overriding legitimate business justification for the dismissal (the "overriding-justification element"). *Miracle*, 137 N.E.3d at 1113 (citing *Collins v. Rizkana*, 73 Ohio St.3d 65, 652 N.E.2d 653, 657–58 (1995)). The first two elements—clarity and jeopardy—are questions of law for a court to decide.  *Collins*, 652 N.E.2d at 658. Whereas, as a general matter, the last two elements—causation and overriding-justification—involve factual issues for a factfinder to decide. *Id.*

*Romero v. City of Middletown*, 479 F.Supp.3d 660, 670-71 (S.D. Ohio 2020).

specific policies located within those specific sources, rather than make general assertions to broad policies" ("the specificity requirement"); and (2) "the sources of the public policies must parallel Ohio's whistleblower statute (*i.e.*, a parallelism requirement)." *Id*. (citing *Hale v. Mercy Health Partners*, 20 F. Supp. 3d 620, 639 (S.D. Ohio 2014); and *Hale v. Mercy Health Partners*, 617 F. App'x 395, 403 (6th Cir. 2015)). This parallelism requirement means that the source for the public policy on which Plaintiffs rely must be of a type that either "(1) imposes an affirmative duty on employees to report a violation, (2) prohibits employers from retaliating against employees who file complaints on the topic, or (3) is designed to protect the public's health and safety." *Id*. at 672 (citing *Hale*, 617 F. App'x at 403). Under Ohio law, it is the plaintiff's burden to identify the public policy and the sources for that policy. *Id*. at 674 (citing *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 956 N.E.2d 825, 831 (Ohio 2011)). A court may not do so *sua sponte*. *Id*.

Therefore, to the extent that it seeks to dismiss Plaintiffs' claims for retaliation in violation of public policy, the Motion to Dismiss filed by West Chester Township is GRANTED.

## III.   **CONCLUSION**

Based on the foregoing, Defendants' Motions to Dismiss (Docs. 25, 26, 28, 29, 32) are **DENIED in PART and GRANTED in PART.** The Motions are **GRANTED** only to the extent that Plaintiffs' claims under Ohio Revised Code § 2307.60 (Count Six) based on Ohio Revised Code §§ 2921.05 and 2921.03 are **DISMISSED**; Plaintiffs' claims for retaliation in violation of public policy (Count Seven) are **DISMISSED**; and to the extent that the claims against the individually named Board of Trustees are brought against them

in their official capacity are **DISMISSED**.  Defendants' Motions to Dismiss are **DENIED** in all other respects.

Defendant West Chester Township Police Motion to Dismiss (Doc. 27) is **GRANTED**.  Defendant West Chester Township Police is **DISMISSED** as a party to this action.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
JUDGE MICHAEL R. BARRETT